1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE NAVARRO, *on behalf of herself, and all others similarly situated, and the general public*,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No.  1:24-cv-00280-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT TARGET CORPORATION'S MOTION FOR TRANSFER OF VENUE AND DENYING MOTION TO DISMISS AS MOOT<br><br>(ECF Nos. 11, 24)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is Target Corporation's ("Target") motion to dismiss, filed May 30, 2024, and motion for a change of venue, filed September 12, 2024.  (ECF Nos. 11, 24.) Having considered the moving papers, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Target's motion to change venue, pursuant to 28 U.S.C. § 1404(a), and denying the motion to dismiss as moot.

## I.

## BACKGROUND

This is a consumer fraud putative class action regarding acne treatment drug products containing benzoyl peroxide ("BPO").  (ECF No. 1, ¶ 1.)  Plaintiff is Grace Navarro, a California resident who bought BPO products, including Target Corporation's ("Target") Up & Up Acne

Spot treatment.  (<u>Id.</u> at ¶ 15.)  Target is a corporation and a citizen of Minnesota with its principal place of business in Minneapolis, Minnesota.  (<u>Id.</u> at ¶ 16.)  Plaintiff alleges that Target marketed and sold BPO products to Plaintiff, and the public, that "decomposed into benzene rendering them materially different than advertised." (<u>Id.</u> at ¶ 4.)  Benzene is a "known human carcinogen" and "exposure, even in low amounts, increases the risk of blood cancers and other adverse effects." (<u>Id.</u> at ¶ 5.)  Plaintiff asserts that Target's BPO products "have been found to have benzene," and "[Target] never listed benzene among the ingredients, or anywhere on the products' labels, containers, advertising or on [Target's] website." (<u>Id.</u> at ¶ 8.)  Moreover, Target did not warn anyone that the BPO products had benzene or were at risk of benzene contamination.  (<u>Id.</u> at ¶ 8.)

Plaintiff places high priority on health and safety, as well as avoiding "adverse health consequences of exposures to carcinogens such as benzene." (<u>Id.</u> at ¶ 71.)  When shopping for drug products, Plaintiff places particular concern on "cost effectiveness and warning signs and labels." (<u>Id.</u> at ¶ 71.)  Based on Target's statements, its widely recognized name, as well as "lack of information that the BPO products contained carcinogens such as benzene, Plaintiff believed the BPO products were safe to put on her skin." (<u>Id.</u> at ¶ 71.)  Thus, Plaintiff "bought Target Up & Up Acne Spot treatment" and "used it from 2013 to November 2023 for cleaning out her pores and to avoid breakouts." (<u>Id.</u> at ¶ 72.)[1]  Plaintiff would not have bought BPO products from Target but for Target's statements and misrepresentations, leaving Plaintiff with an "ascertainable economic loss." (<u>Id.</u> at ¶ 73.)

On March 7, 2024, Plaintiff filed the instant putative class action against Target alleging the following claims: 1) violations of California's Unfair Competition Law, Bus. & Prof Code § 17200 et seq.; 2) violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §1750, et seq.; 3) False Advertising, Bus. & Prof. Code §17500 et seq.; 4) Deceptive Trade Practices, Cal. Civ. Code § 1750, et seq.; 5) Breach of Express Warranty; 6) Breach of Implied

---

[1] Plaintiff may have also bought 10% Benzoyl Peroxide Pan Oxyl Acne Foaming was from Target.  (<u>See</u> ECF No. 1, ¶ 72.)  While this lawsuit is against only Target, the complaint discusses two other corporations, and throughout Target is referred to as "Defendants."  Plaintiff is not precise in her complaint which defendant she bought Pan Oxyl Acne Foaming from.  However, for purposes of this order, it is immaterial.

Express Warranty; and 7) Unjust Enrichment.  (<u>Id.</u> at pp. 31-44.[2])  Plaintiff seeks to have a nationwide class certified to include all persons who bought for use and not resale BPO products in the United States.  (<u>Id.</u> at ¶ 76.)  Plaintiff also seeks to certify state subclasses for all persons who bought for use and not resale BPO products in California, Connecticut, Hawaii, Illinois, Maryland, Massachusetts, Missouri, New York, Nevada, Ohio, Pennsylvania, Rhode Island, and Washington State.  (<u>Id.</u> at ¶ 77.)  On behalf of herself and the putative classes, Plaintiff prays for injunctive and declaratory relief against Target, including an order prohibiting Target from engaging in the alleged misconduct; and an order requiring Target to disgorge profits and revenues derived from their course of alleged course of misconduct and that such unjust enrichment be restored to the class or distributed cy près as the Court shall deem just and equitable.  (<u>Id.</u> at p. 45.)  On behalf of herself, Plaintiff seeks compensatory, punitive, and statutory damages, as well as attorneys' fees and costs with pre- and post-judgment interest.  (<u>Id.</u>)

On May 30, 2024, Target filed a motion to dismiss based on lack of standing and failure to state a claim, which was referred to the undersigned by the district judge.  (ECF Nos. 11, 14.) The Court vacated the hearing on the motion to dismiss and stayed this case until a ruling from the Judicial Panel on Multidistrict Litigation on whether this and other cases across the country involving BPO products should be centralized.  (ECF No. 17.)  On August 1, 2024, the Judicial Panel denied the motion for centralization.  (ECF No. 18.)  Accordingly, the Court lifted the stay and set a briefing schedule on the motion to dismiss with a hearing on the matter scheduled for November 6, 2024.  (ECF No. 19, 21.)

On September 12, 2024, Target filed a motion to change venue, which was referred to the undersigned by the district judge.  (ECF No. 24, 25.)  On September 24, 2024, Target filed a notice of supplemental authority, indicating that a similar case in the United States District Court for the Northern District of Illinois had recently been transferred to the District of Minnesota. (ECF No. 27.)  On September 13, 2024, Plaintiff filed an opposition to this notice wherein she argued that the supplemental authority was not persuasive because the plaintiff in the Illinois

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system or, when not available, the actual PDF page number.

case had not opposed the change of venue.  (ECF No. 28.)  Meanwhile, "Plaintiff in this case opposes the motion to transfer."  (Id. at p. 3.)  Plaintiff concluded by requesting that the Court not consider the supplemental authority.  (Id.)  However, Plaintiff failed to timely file an actual opposition to the motion to change venue by the required deadline.  On September 30, 2024, the Court issued an order vacating the hearing on the motion to change venue.  (ECF No. 29.)  On October 1, 2024, Plaintiff filed an unopposed motion for leave to file an opposition (ECF No. 32; see ECF No. 33), which the Court granted.  (ECF No. 34.)  The Court accepted Plaintiff's opposition (ECF No. 30-1) and directed Target to file its reply, if any, by October 17, 2024.  (ECF No. 34.)  Target timely filed its replies for both motions.  (ECF Nos. 36, 38.)  The Court now issues its findings and recommendations without a hearing.  See Local Rule 230(g).

## II.

## RELATED ACTIONS

On April 5, 2024, plaintiff Lucinda O'Dea filed a putative class action against Target regarding acne treatment drug products containing BPO in the Northern District of Illinois.  O'Dea v. Target Corp., No. 1:24-cv-02763, Complaint, ECF No. 1 (N.D. Ill. Apr. 5, 2024).[3]  The plaintiff sought to certify a nationwide class and a set of state subclasses for California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington State.  Id., ECF No. 1, ¶¶ 101-03.  On September 12, 2024, Target filed a motion to transfer to the matter to the District of Minnesota.  Id., ECF No. 25.  On September 18, 2024, the court held a telephonic hearing and granted Target's motion to transfer as unopposed.  Id., ECF No. 26.

On April 12, 2024, plaintiffs Bria Miller and Jordan Judt filed a putative class action against Target regarding acne treatment drug protocols containing BPO in the District of Minnesota.  Miller v. Target Corp., No. 24-cv-01323-ECT-JFD, Complaint, ECF No. 1 (D. Minn. Apr. 12, 2024).  The plaintiffs seek to certify a nationwide class and a set of state

---

[3] Under the Federal Rules of Evidence, a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

subclasses for Nebraska and California. <u>Id.</u>, Amended Complaint, ECF No. 12, ¶¶ 53-55. As in this case, the court stayed the matter pending a determination from the Judicial Panel on Multidistrict Litigation. <u>Id.</u>, ECF No. 28. Following the Panel's decision not to order centralization, the parties informed the court of the three other related pending federal cases and asked the court to continue abeyance as Target sought to have cases transferred to the District of Minnesota, which the court granted. <u>Id.</u>, ECF Nos. 30, 33. On August 21, 2024, the court entered an order of reassignment of related cases that related <u>Hill-Horse v. Target Corp.</u>, which is discussed below. <u>Id.</u>, ECF No. 32. On September 11, 2024, the parties informed the court that Target would be filing motions to transfer in <u>O'Dea</u> and this case. <u>Id.</u>, ECF No. 34, ¶ 3.

On May 17, 2024, plaintiff Selina Hill-Horse filed a putative class action against Target regarding acne treatment drug protocols containing BPO in the Fourth Judicial District, Hennepin County, Minnesota. <u>Hill-Horse v. Target Corp.</u>, No. 24-cv-02197-ECT-JFD, Summons and Complaint, ECF No. 1-1 (D. Minn. Apr. 12, 2024). On June 7, 2024, Target removed the action to the District of Minnesota. <u>Id.</u>, Notice of Removal, ECF No. 1. The plaintiff seeks to certify a nationwide class and a state subclass for Texas. <u>Id.</u>, ECF No. 1-1, ¶ 80. As in this case, the court stayed the matter pending a determination from the Judicial Panel on Multidistrict Litigation. <u>Id.</u>, ECF No. 14. Following the Panel's decision not to order centralization, the parties informed the court of the three other related pending federal cases and asked the court to continue abeyance as Target sought to have cases transferred to the District of Minnesota, which the court granted. <u>Id.</u>, ECF Nos. 19, 20. On August 21, 2024, the court entered an order of reassignment of related cases that related this case to <u>Miller v. Target Corp.</u> <u>Id.</u>, ECF No. 21. On September 11, 2024, the parties informed the court that Target would be filing motions to transfer in <u>O'Dea</u> and this case. <u>Id.</u>, ECF No. 23, ¶ 3.

### III.

### LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." <u>Ventress v. Japan Airlines</u>, 486 F.3d 1111, 1118 (9th Cir. 2007), quoting 28 U.S.C. § 1404(a).

The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .' Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26-27 (1960)).

The initial inquiry under 28 U.S.C. § 1404(a) is whether the case could have been brought in the forum to which transfer is sought.  28 U.S.C. § 1404(a); Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).  If venue is appropriate in the proposed transferee court, the statute provides "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622).

Among the non-exclusive factors a district court may consider in determining whether a transfer is warranted for the convenience of the parties and witnesses and in the interest of justice are: (1) the plaintiff's choice of forum, (2) the respective parties' contacts with the forum, (3) contacts relating to the plaintiff's cause of action in the chosen forum, (4) differences in the costs of litigation in the two forums, (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (6) ease of access to sources of proof, (7) the location where relevant agreements, if any, were negotiated and executed, and (8) the state that is most familiar with the governing law.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Courts also consider the feasibility of consolidation with a pending related action in the forum to which transfer has been proposed.  A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal., 503 F.2d 384, 389 (9th Cir. 1974); see Hawkins v. Gerber Prods. Co., 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (discussing that transfer was supported where five similar cases against defendants were already consolidated and pending in another district).  "Weighing of the factors for and against transfer involves subtle considerations . . . ."  Ventress, 486 F.3d at 1118, quoting Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).  The party seeking a change of venue has the burden of demonstrating transfer is appropriate.  Commodity Futures Trading Comm'n, 611 F.2d at 279.

/ / /

# IV.

## DISCUSSION

### A.    Motion to Transfer Venue

Target argues that this case should be transferred to the District of Minnesota because the convenience of the parties and interest of justice weigh in favor of transfer, pursuant to 28 U.S.C. § 1404(a).  (ECF No. 24, pp. 9-15.)  While Plaintiff concedes that venue in the District of Minnesota would be proper and that the District of Minnesota is one where her action might have been brought, she contends that transfer does not serve convenience of the parties or witnesses, nor would it promote the interest of justice.  (*See* ECF No. 30-1, pp. 7-12.)  In particular, Plaintiff argues that her putative class action was the first-filed of such actions, and therefore, the so-called first-filed rule weighs insurmountably heavy in favor of not transferring.  (Id. at pp. 10-11.)  Target replies that that the first-to-file rule is inapplicable here, and any such consideration is already subsumed in the traditional factors district courts consider when determining whether to transfer under § 1404(a).  (ECF No. 38, pp.7-8.)  While Plaintiff's choice of forum is a relevant consideration, the Court agrees with Target that the first-to-file rule is inapplicable here. Further, convenience of the parties and the interest of justice warrants transfer in this matter.

The first-to-file rule was developed to "serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly."  Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 625 (9th Cir. 1991) (quoting Church of Scientology v. U.S. Dep't of the Army, 611 F.2d 738, 750 (9th Cir 1979), overruled on other grounds, Animal Legal Defense Fund v. U.S. Food & Drug Admin., 836 F.3d 987, 990 (9th Cir. 2016) (en banc and per curiam)).  Under the first-to-file rule, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."  Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997); Alltrade, 946 F.2d at 628.  The rule is a "'generally recognized doctrine of federal comity' permitting a district court to decline jurisdiction over an action."  Wallerstein v. Dole Fresh Vegetables, Inc., 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013) (quoting Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)).

1    Plaintiff misinterprets the applicability of the first-to-file rule.  In Plaintiff's view, the

2  first-to-file rule applies whenever a court is considering a § 1404(a) motion to change venue,

3  giving preference to the first-filed action unless there is evidence of forum shopping.  (ECF No.

4  30-1, pp. 6-7.)   However, the Ninth Circuit has repeatedly stated that the rule applies in the

5  context of a second district court being presented with a motion to transfer venue to the district

6  of the first-filed suit.  Cedars-Sinai, 125 F.3d at 769; Alltrade, 946 F.2d at 628.  Here, the parties

7  do not disagree that the instant lawsuit is the first filed.  (ECF No. 24, p. 10; ECF No. 30-1, p.

8  11.)  Therefore, the logical underpinnings of the first-to-file rule do not apply here because it is

9  the latter court that decides whether the interest of efficiency and judicial economy warrants

10  transfer,  thereby  declining  jurisdiction,  in  light  of  the  fact  that  another  case  has  already

11  commenced.  The inverse does not hold true because the first-filed court will have a differing

12  vantage point on efficiency and economy.  Thus, the appropriate legal standard for considering a

13  motion to change venue in a first-filed case remains the Ninth Circuit's established § 1404(a)

14  analysis, which includes due consideration of Plaintiff's choice of forum.  See Key v. Sprout

15  Foods, Inc., No. 21-cv-02391-VC, 2021 WL 4061735, at *1 (N.D. Cal. Sept. 7, 2021)

16  (discussing that first-to-file rule does not apply to first-filed case).

17    Plaintiff has found one case where a district court stated it was conducting a first-to-file

18  rule analysis in a similar posture to the present case.  See Guthy-Renker Fitness, L.L.C. v. Icon

19  Health & Fitness, Inc., 179 F.R.D. 264 (C.D. Cal. 1998).  The Court does not find this case to be

20  persuasive.  After making an initial determination that the plaintiff's case met the first-to-file

21  criteria, the court went on to discuss equitable exceptions to the first-to-file rule, including

22  whether the plaintiff's lawsuit was anticipatory, location of witnesses and evidence, calendar

23  congestion, connection with the forum, and "interests of justice."  Id. at 270-74.  Essentially, the

24  court conduced a § 1404(a) analysis.  See Jones, 211 F.3d at 498-99.  In addition, the complaint

25  in Guthy-Renker was not a putative class action, which carries additional considerations that the

26  Court discusses further below.

27    In any event, Plaintiff relies on Guthy-Renker for the proposition that "this Court can

28  only dispense with the first-to-file rule 'for equitable reasons; for example, where the first action

was filed merely as means of forum shopping.'" (ECF No. 30-1, p. 11) (quoting <u>Guthy-Renker</u>, 179 F.R.D. at 269.) Plaintiff overstates. Whether to apply the first-to-file rule remains at the discretion of the Court. <u>Alltrade</u>, 946 F.2d at 625. Indeed, Plaintiff acknowledges that the first-to-file rule is a judicially created rule. (ECF No. 30-1, p. 11.) Plaintiff also concedes that the first-to-file rule cannot displace the statutory requirements under § 1404(a). (<u>Id.</u>) However, in a bald argument, Plaintiff asserts that the statutory requirements of § 1404(a) cannot displace the first-to-file rule. (<u>Id.</u>) This makes little sense. It is axiomatic to our legal system that the legislature is empowered to enact statutes that may displace judicially created rules. While the judiciary interprets these statutes, and can declare them unconstitutional where appropriate, it is not the province of the judiciary to create judicial rules that usurp the power vested in the legislature. On this basis alone, Plaintiff's argument fails.

Further, a § 1404(a) analysis includes consideration of a plaintiff's chosen forum. <u>Jones</u>, 211 F.3d at 498-99. Thus, even assuming there might be any strategic difference in employing a §1404(a) analysis over a first-to-file analysis, any theoretical harm here based on Plaintiff's choice of forum is illusory. Tellingly, Plaintiff identifies no such harm should the Court utilize the established §1404(a) analysis.[4]

Turning to the analysis for a motion to change venue, pursuant to §1404(a), the Court finds that this action could have been brought in the District of Minnesota. Under the Class Action Fairness Act, minimal diversity is satisfied because Plaintiff is a resident of California, Target is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota, and the aggregated claims exceed $5 million, which satisfies 28 U.S.C. § 1332(d). (ECF No. 1, ¶¶ 15, 16, 18.) The District of Minnesota has personal jurisdiction over Target because its principal place of business is located there. (<u>Id.</u> at ¶ 16.) Venue is proper in the District of Minnesota because Target resides there and a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred there. 28 U.S.C. § 1391. Plaintiff does not dispute that

---

[4] Even if the Court were to conduct a first-to-file analysis, the first-to-file rule can be overridden by considerations including "the convenience of the parties and witnesses." <u>Guthy-Renker</u>, 179 F.R.D. at 269. Therefore, Plaintiff also overstates by suggesting that forum shopping is the only reason for overriding the first-to-file rule. (ECF No. 30-1, p. 11.)

1   this action could have been brought in the District of Minnesota.

2          The Court therefore turns to whether transfer is warranted for the convenience of the

3   parties and witnesses and in the interest of justice.

4                  **1.   Choice of Forum, Contacts with the Forum and Claims, and Consolidation**

5          Plaintiff asserts that there is no basis to diminish her choice of forum when analyzing a

6   change of venue.  (ECF No. 30-1, p. 7.)  In support, Plaintiff offers that she resides in, bought,

7   and used Target's BPO products in her home in California.  (Id.)  Plaintiff also states that her

8   claims involve products under the direct control of Target and that there is no evidence of forum

9   shopping or bad faith on her part.  (Id.)  Target argues that Plaintiff's choice to bring her case as

10  a putative class action renders her choice of forum very little weight.   Target also identifies

11  precedent supporting its position.  (Id. at p. 8.)

12         "Ordinarily courts attach a 'strong presumption in favor of the plaintiff's choice of

13  forum.'"  Randles v. Nationstar Mortg., LLC, No. 1:24-cv-0177-KES-SKO, 2024 WL 1855720,

14  at *4 (E.D. Cal. Apr. 26, 2024) (quoting Piper Aircraft v. Reyno, 454 U.S. 235, 255 (1981)); see

15  also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

16  However, "in class actions, a plaintiff's choice of forum is often accorded less weight."

17  Hawkins, 924 F. Supp. 2d at 1214 (citing Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir.1987));

18  see also Meza v. Procter & Gamble Co., No. EDCV 23-91 JGB (SHKx), 2023 WL 3267861, at

19  *7, *11 (C.D. Cal. Apr. 27, 2023) (discussing and listing cases).  In evaluating the weight to be

20  accorded to the plaintiff's choice of forum in a class action a court should consider the extent of

21  both parties' contacts with the forum, including those contacts relating to the plaintiff's cause of

22  action.  See Lou, 834 F.2d at 739.

23         To begin with, Plaintiff's choice to bring this case as a putative class action, with both a

24  proposed nationwide and state subclasses, reduces the weight given to her choice of forum.  As

25  Plaintiff acknowledges, Target products are sold throughout the country, and Plaintiff offers no

26  reason why her choice of forum would be superior to any other.  Additionally, Plaintiff does not

27  rebut Target's argument that there could be potential personal jurisdiction issues for any foreign

28  plaintiffs that might consolidate, join, or intervene in this lawsuit should it remain in this District.

1    Of course, if this case were transferred to the District of Minnesota, where Target resides and has
2    its principal place of business, Target would be subject to general jurisdiction.

3         Plaintiff's causes of action concern Target's alleged misrepresentations and omissions,
4    including marketing, to consumers regarding the safety of BPO products.  (ECF No. 1, ¶¶ 10, 11,
5    36, 47, 58-66.)  The material allegations are based on a set of Target products sold nationwide
6    and alleged actions or omissions related to BPO products formation, marketing, and sales, all of
7    which have no particular tie to the Eastern District of California.  Further, "courts have reasoned
8    that 'in a false advertising action, the heart of the matter lies where the marketing and
9    manufacturing decisions were made, which is typically at [the d]efendant's headquarters.'"
10   Meza, 2023 WL 3267861, at *7 (quoting Hawkins, 924 F. Supp. 2d at 1215).  To be sure, the
11   fact that Plaintiff resides in the Eastern District of California and bought the PBO products here
12   carries some weight, but it does not create a strong presumption against transferring regarding
13   Plaintiff's connection to the claims.

14        Finally, Target has identified a recent case that supports its position.  In Key v. Sprout
15   Foods, Inc., the plaintiffs sought to bring a first-filed putative class action, with California state-
16   law claims on behalf of a California class, against a corporate defendant that was located in New
17   Jersey.  2021 WL 4061735, at *1.  The court noted that in the District of New Jersey there was a
18   subsequently filed lawsuit with a proposed nationwide class against the defendant.  Id.  The court
19   observed that since the plaintiffs were the first to file, the first-to-file rule did not apply.  Id.
20   While the court acknowledged that transfer was a "close question," the "potential consolidation
21   with the pending action in New Jersey would reduce litigation costs and result in a more efficient
22   discovery process."  Id.  The court acknowledged that "[t]he [p]laintiffs' choice of forum [was]
23   entitled to some weight because they seek to represent a California class that was allegedly
24   harmed in California."  Id.  However, the court observed that "the real locus of this case is in
25   New Jersey, where [the defendant's] manufacturing and marketing decisions were made."  Id.
26   (citing Hawkins, 924 F. Supp. 2d at 1215).  The Court finds this case persuasive.

27        Here, Plaintiff seeks to certify both a nationwide class and a set of state subclasses.  In
28   addition, there are three other cases in the District of Minnesota, two of which have already been

related and one recently transferred.  Miller v. Target Corp., No. 24-cv-01323-ECT-JFD, Order of Reassignment of Related Cases, ECF No. 32 (D. Minn. Aug. 21, 2024); Hill-Horse v. Target Corp., No. 24-cv-02197-ECT-JFD, Order of Reassignment of Related Cases, ECF No. 21 (D. Minn. Aug. 21. 2024); see O'Dea v. Target Corp., No. 1:23-cv-02763, Minute Entry Granting Motion to Transfer, ECF No. 26 (N.D. Ill. Sept. 18, 2024).  In light of these facts, the Court gives Plaintiff's choice of forum little weight.  In addition, while Plaintiff remains the only named plaintiff at this moment, the Court also is persuaded by Target's argument regarding potential personal jurisdiction issues should this putative class action remain in this District.  Finally, the Court observes that the material allegations in Plaintiff's complaint concern conduct outside of California, largely in the District of Minnesota.  Indeed, the parties agree that Target resides in Minnesota and has its principal place of business in Minneapolis, Minnesota.[5]  Therefore, the Court finds that Plaintiff's choice of forum does not weigh against transfer, and the parties' contacts with the forum and claims weigh in favor of transfer.  Potential consolidation also weighs in favor of transfer.

### 2.  Convenience of the Parties and Witnesses

Target is incorporated in, with its principal place of business also in, the District of Minnesota.  Meanwhile, Plaintiff resides and bought BPO products from Target in the Eastern District of California.   While this alone might "merely shift rather than eliminate the inconvenience," Decker Coal, 805 F.2d at 843, Target again highlights that there are three other pending cases in the District of Minnesota that are substantially similar in all material respects to this case and that they have been formally related.  The Court finds that transferring this case would help Target contain legal expenses, efficiently resolve multiple cases with common facts and issues in a single forum simultaneously, and avoid unnecessary duplication of effort.  Therefore, convenience of the parties weighs in favor of transfer.  Cont'l Grain Co. v. Barge

---

[5] Plaintiff failed to address Target's observation, (ECF No. 38, p. 7), that the Panel on Multidistrict Litigation noted that BPO-products defendants have made efforts to "organize the litigation on a defendant-specific basis by seeking to transfer claims against them to either their home jurisdictions or the jurisdictions in which the first-filed action is pending." In re Benzoyl Peroxide Mktg., Sales Pracs. & Prod. Liab. Litig., No. MDL 3120, 2024 WL 3629067, at *2 (U.S. Jud. Pan. Mult. Lit. Aug. 1, 2024).  In other words, the Panel's decision explicitly acknowledged that transfer to a defendant's home jurisdiction may be appropriate in some circumstances.

FBL-585, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); see also J.A. Indus., Inc., 503 F.2d at 386 ("The feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties.").

Turning to convenience of witnesses, the parties dispute what the legal standard is when courts consider this factor.  Plaintiff argues that a defendant seeking transfer under 1404(a) "must identify the witnesses, their location, an the relevance of [their] testimony."  (ECF No. 30-1, p. 8.)  Target responds that there is no case that requires such specificity.  (ECF No. 38, p. 9.)  Upon a thorough review of the Ninth Circuit precedent, the Court agrees with Target that there is no absolute requirement for a defendant to identify the exact identity of witnesses, their location, and the relevant testimony they have to offer.  Some district courts have stated that such a specificity requirement exists.  See Randles, 2024 WL 1855720, at *6; E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994).  However, the majority of district courts take this factor on a case-by-case basis given the development of the case and using a common sense understanding of convenience.  Meza, 2023 WL 3267861, at *9; LaGuardia v. Designer Brands, Inc., No. 19cv1568 JM(BLM), 2020 WL 2463385, at *7 (S.D. Cal. May 7, 2020); Joong-Ang Daily News Cal., Inc. v. Cho, No. CV 18-9634-MWF (SSx), 2019 WL 994018, at *4 (C.D. Cal. Jan. 28, 2019); Hawkins, 924 F. Supp. 1208, 1215; Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160-61 (S.D. Cal. 2005); Wiley v. Trendwest Resorts, Inc., No. C 04-4321 SBA, 2005 WL 1910934, at *6 (N.D. Cal. Aug. 10, 2005); Carolina Cas. Co. v. Data Broadcasting Corp., 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001) (citing Royal Queentex Enters. v. Sara Lee Corp., No. C-99-4798 MJJ, 2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000)).  This Court agrees with the majority of district courts and will assess this factor in context and using a common sense understanding of convenience.

Plaintiff's sole authority fails to persuade the Court otherwise.  In Lee v. Corr. Corp. of

1  <u>Am.</u>, the district court adopted a recommendation from a magistrate judge that venue was
2  improper in the District of Hawaii and granted the defendants' motion to transfer pursuant to 28
3  U.S.C. § 1406(a).  525 F. Supp. 2d 1238, 1240, 1242-43 (D. Haw. 2007).  Notwithstanding that
4  holding, Plaintiff cites to the magistrate judge's alternative findings and recommendation that in
5  the alternative, even if venue were proper, transfer would be appropriate pursuant to § 1404(a).
6  <u>Id.</u> at 1243.  Significantly, the magistrate judge in <u>Lee</u> did not find that there was a requirement
7  that a party identify exact witnesses.  <u>See id.</u>  Rather, the magistrate judge noted the context of
8  the matter was a prisoner § 1983 case and that the defendants had identified 50 individuals whom
9  they expected to call as witnesses that all resided in Mississippi.  <u>Id.</u>  The magistrate judge then
10 compared this to the plaintiff's general assertion that "many inmate witnesses are located in
11 Hawaii," none of which the plaintiff identified.  <u>Id.</u> at 1244-45.  Under those circumstances, the
12 magistrate judge found that convenience of witnesses would favor transfer.  <u>Id.</u> at 1245.

13       Here, the litigation is in the early states; discovery has not commenced.  The parties have
14 not formally identified any specific witnesses by location and relevant testimony.  However,
15 based upon the allegations of the complaint and the causes of action, the Court finds that there
16 are likely multiple witnesses from Target headquarters in Minnesota.  For example, the
17 complaint contains allegations regarding various action or activities of Target, including
18 knowledge related to formulation, marketing, and sales of BPO products.  (ECF No. 1, ¶¶ 22-66.)
19 Thus, almost certainly there will be a Fed. R. Civ. P. 30 (b)(6) deposition of Target, which is
20 located in Minnesota.  Plaintiff does not contest that Target employee witnesses headquarters in
21 Minnesota are relevant to her claims.

22       In contrast, the Court finds that it is unlikely that there will be many, if any at all, non-
23 party witnesses based in California.  The complaint contains only three paragraphs regarding
24 Plaintiff-specific allegations (<u>Id.</u> at ¶¶ 71-73) and offers no information regarding the resident of
25 any of the other states she seeks to represent.

26       Plaintiff attempts to downplay this factor by arguing that with the emergence of remote
27 depositions, inconvenience is limited.  This argument cuts both ways.  Just as Target might
28 appear over Zoom for a deposition, the same is true for Plaintiff.  The Court is aware that with

the advancements of technology, the convenience calculus has shifted over recent years.  See, e.g., Joong-Ang Daily News, 2019 WL 994018, at *6.  That said, convenience of non-party witnesses remains a relevant factor in a motion to transfer.  Id.  Indeed, Plaintiff concedes that at the very least some inconvenience for Target would manifest should the case remain in this District and proceed to trial.  (ECF No. 30-1, p. 9.)

Based on the foregoing, the Court finds that convenience of witnesses weighs in favor of transfer.

### 3.  Differences in the Costs of Litigation in the Two Forums

Target argues that there is a concentration of witnesses and evidence in the District of Minnesota, and therefore, transfer will result in a less expensive adjudication and more successful compulsion of testimony and production of evidence.  (ECF No. 24, p. 13) (citing WowWee Grp. Ltd. v. Wallace, No. CV-12-2298-MWF(VBKx), 2012 U.S. Dist. LEXIS 199343, at *8 (C.D. Cal. June 27, 2012)).  Plaintiff does not rebut this argument.  Based on the previous analysis above, the Court agrees with Target that transferring this matter to the District of Minnesota will preserve time, energy, and money.  Again, this is especially so given that there are three other similar cases pending in the District of Minnesota.  This factor weighs in favor of transfer.

### 4.  Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

Target argues that compulsory process does not favor continuing the litigation in the Eastern District of California because "most witnesses will be located in Minnesota or nationwide."  (ECF No. 24, p. 13.)  Plaintiff did not respond.  Because neither party has identified or theorized who would be a relevant non-party witness, the Court find that this factor is neutral.

### 5.  Access to Proof and Location Where Agreements Were Negotiated or Executed

The parties essentially agree that this matter in not a case that will have evidence of a certain type that cannot be moved or digitally retrieved and shared via the internet.  (ECF No. 31-1, p. 9; ECF No. 38, p. 11.)  Although the physical location of documents no longer carries much weight in the transfer analysis given that technology has made it easier for documents to be

1   transferred to different locations, ease of access to sources of proof is still a relevant factor to

2   consider.  See Joong-Ang Daily News, 2019 WL 994018, at *6 (citing Metz v. U.S. Life Ins. Co.

3   in City of New York, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009)).  Despite Target's argument

4   that any relevant agreements or warranties vetted by Target involving BPO products were at the

5   very least done in part in Minnesota, the Court finds that these factors are neutral because the

6   evidence in this matter is of a certain type that can be moved or digitally retrieved and shared via

7   the internet.

8           **6.  The State Most Familiar with the Governing Law**

9           Plaintiff argues that the "alleged misconduct" giving rise to Plaintiff's claims occurred in

10  the Eastern District of California and, as such, a trial in the District of Minnesota would "impose

11  jury duty on the people of a community that have little relation to the litigation."  (ECF No. 30-1,

12  10.)  As Target points out, neither of these points addresses whether California or Minnesota are

13  more or less familiar with the governing law.  (ECF No. 38, 11.)  Additionally, Plaintiff asserts

14  claims under the laws of multiple states and seeks to certify a nationwide and over a dozen state

15  subclasses.  Therefore, it is not clear how either a district court in California or Minnesota would

16  be more familiar given the potential array of claims in various states.  The Court finds this factor

17  to be neutral.[6]

18          **7.  Additional Factors**

19          Target makes a separate argument that transfer to the District of Minnesota would likely

20  lead to a quicker resolution of the matter based on court congestion.  (ECF No. 24, pp. 13-24.)

21  Plaintiff does not address this argument.  However, the Court finds this factor to be neutral.

22  Target asks the Court to compare the three-year list (*i.e.*, the list of cases in a district court

23  pending three or more years) between the District of Minnesota and the Eastern District of

24

25  [6] The parties at times are inexact in their discussion of this factor, which is enumerated under Jones.  211 F.3d at
    498-99.  In the briefing, the parties seemingly suggest that this factor synonymous with the local interest factor that
26  courts consider when conducting a *forum non conveniens* analysis.  (See ECF No. 30-1, p. 10, 12; ECF No. 38, p.
    12); see also Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 703 (9th Cir. 1995) (discussing local
27  interest as a public interest factor in a *forum non conveniens* analysis).  While district courts at times use the phrase
    "local interest" when conducting a § 1404(a) analysis, it has been in the context of the parties' contacts with the
28  forum.  See Meza, 2023 WL 3267861, at * 8.  The Court has thoroughly discussed such interests in the section
    above regarding the parties' contacts with the forum.

California.  As should be apparent, cases at times take over three years to resolve for a variety of reasons, including stays initiated by the parties or collateral bankruptcy proceedings, for example.  Therefore, the mere fact that the District of Minnesota has less cases on its three-year list tells this Court little on how quickly this matter might resolve there.  Similarly, Target's observation that the 2023 Judicial Conference of the United States recommended adding four district court judgeships to the Eastern District of California tells the Court nothing about the speed of resolution in the District of Minnesota.[7]

Upon weighing the factors discussed above, the Court finds that transfer to the District of Minnesota is appropriate and warranted under 28 U.S.C. § 1404(a).

### B.    Motion to Dismiss

Because the Court recommends this action be transferred to the District of Minnesota, the pending motion to dismiss should be denied as moot.  See, e.g., Brown v. Newsom, No. 23-cv-04040-RFL, 2024 WL 2853978, at *3 (N.D. Cal. May 1, 2024) (granting a motion to transfer under § 1404(a) and denying accompanying motion to dismiss as moot); Kornfeind v. Kia Am., Inc., No. 8:23-cv-01796-JVS-KES, 2024 WL 4436904, at *4 (C.D. Cal. Mar. 7, 2024) (same); Montijo v. Amazon.com Servs. LLC, No. 1:22-cv-00084-ADA-SAB, 2022 WL 16702134, at *12 (E.D. Cal. Nov. 3, 2022) (same), adopted, 2022 WL 17722873.

### V.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Defendant Target Corporation's motion to transfer (ECF No. 24) be GRANTED;

---

[7] It appears that Target is suggesting the Court consider something it is all too aware of, that "[j]udges in the Eastern District of California carry the heaviest caseloads in the nation."  Rush Air Sports, LLC v. RDJ Grp. Holdings, LLC, No. 1:19-cv-00385-LJO-JLT, 2019 WL 4879211, at *1 (E.D. Cal. Oct. 3, 2019); Pizana v. SanMedica Int'l, LLC, No. 1:18-cv-00644-DAD-SKO, 2020 WL 469336, at *7 n.8 (E.D. Cal. Jan. 29, 2020); see also Hon. Lawrence J. O'Neill, et al., An Important Letter to Congress from the Judges of the Eastern District of California Regarding Our Caseload Crisis, (June 19, 2018) https://www.caed.uscourts.gov/caednew/index.cfm/news-archive/important-letter-re-caseload-crisis/ (noting that in 2018, "[e]ach District Judge handles an average of approximately 900 cases at any given time, more than double the nationwide average").  If that were Target's real concern, the Court would direct the parties "to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties."  Rush Air, 2019 WL 4879211, at *1.  At any rate, "administrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a § 1404(a) transfer."  Rubio v. Monsanto Co., 181 F. Supp. 3d 746, 765 (C.D. Cal. 2016) (citing Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335 (9th Cir. 1984)).

2.   Defendant Target Corporation's motion to dismiss (ECF No. 11) be DENIED as MOOT; and

3.   This matter be TRANSFERRED to the United States District Court for the District of Minnesota.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 4, 2024**

_____
UNITED STATES MAGISTRATE JUDGE